# EXHIBIT C

| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| --- | --- |
| | SUPERIOR COURT DIVISION |
| COUNTY OF CABARRUS | 20-CVS-_____ |

| | |
| --- | --- |
| BRIAN LILLIE and wife TRACY LILLIE, ENTERPRISE HOLDINGS GROUP LLC d/b/a COLUBRIS VENTURES, ECREATIVE GROUP, INC., and THREE WIDE MEDIA, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>ALAN JOHN HANKE and LUIS ALBERTO GUERRA<br><br>Defendants. | **COMPLAINT** |

NOW COME Plaintiffs, Brian Lillie and wife Tracy Lillie (collectively, the "Lillies"), Plaintiff Enterprise Holdings Group LLC (hereinafter "EHG"), Plaintiff eCreative Group, Inc. (hereinafter "eCreative"), and Plaintiff Three Wide Media, LLC (hereinafter "Three Wide") (all Plaintiffs collectively referred to herein as "the Plaintiffs") complaining of the Defendants Alan John Hanke and Luis Alberto Guerra (collectively, the "Defendants"), alleging and saying as follows:

1. The Lillies are citizens and residents of Cabarrus County, North Carolina.

2. Plaintiff EHG is a North Carolina Limited Liability Company doing business as Colubris Ventures whose sole member-manager is Plaintiff Brian Lillie.

3. Plaintiff eCreative is an Iowa Corporation whose principal place of business is in Cabarrus County, North Carolina. The Lillies are officers of Plaintiff eCreative.

4. Plaintiff Three Wide is an Iowa Limited Liability Company whose principal place of business is in Cabarrus County, North Carolina. The Lillies are member-managers of Plaintiff Three Wide.

5. Upon information and belief, Defendant Alan John Hanke is a citizen and resident of McHenry County, Illinois, is over the age of eighteen, is under no legal disability, and is not an active member of any military branch.

6. Upon information and belief, Defendant Luis Alberto Guerra is a citizen and resident of Broward County, Florida, is over the age of eighteen, is under no legal disability, and is not an active member of any military branch.

7. On or about November 22, 2017, Plaintiff EHG and World Cryptocurrency Exchange Incorporation (hereinafter "WCE") executed a "BINDING INVESTMENT MEMORANDUM OF UNDERSTANDING" (hereinafter the "Investment Agreement") wherein WCE would provide Plaintiff EHG an initial investment of funds in the amount of one-million dollars ($1,000,000.00) and Plaintiff EHG would use that initial investment to trade in commodities or otherwise leverage against other collateral.

8. On or about December 19, 2017, Plaintiff EHG executed an "IRREVOCABLE MASTER PAYMENT ORDER / PROFIT SHARE AGREEMENT" (hereinafter the "Profit Share Agreement") which sets forth compensation for the intermediaries/consultants (hereinafter the "Consultants") responsible for bringing the principals together in the Business Venture.

9. Pursuant to the Profit Share Agreement, Plaintiff EHG agreed to pay thirty percent (30%) of Plaintiff EHG's yield profit proceeds from the Business Venture to the consultants as a consultancy fee.

10. The Defendants were two of the Consultants in the Business Venture.

11. On or about January 1, 2018, EHG entered into a "CONSULTANT PAYMENT AND DISPERSEMENTS SUBFEE AGREEMENT" (hereinafter the "Subfee Agreement")(the Investment Agreement, Profit Share Agreement, and Subfee Agreement are referred to collectively as the "Business Venture").

12. Pursuant to the Subfee Agreement, Defendant Hanke was to receive 3.75% of the proceeds.

13. Pursuant to the Subfee Agreement, Key Logistics and Consulting LLC was to receive 3.75% of the proceeds.

14. Upon information and belief, Key Logistics and Consulting LLC is a Florida Limited Liability Company with its principal office Hollywood, Florida.

15. Defendant Guerra represented Key Logistics and Consulting LLC in regard to the Business Venture pursuant to the Subfee Agreement.

16. Plaintiff EHG made up front commission payments to the Consultants prior to the realization of any profits from the Business Venture.

17. These up-front commission payments include but are not limited to payments of at least $103,295.00 made to Defendant Hanke.

18. According to the terms of the Business Venture, Plaintiff EHG had the express right to unilaterally terminate the Business Venture for cause through early redemption.

19. Upon termination of the Business Venture for cause, Plaintiff EHG would make payment of the initial investment amount and any monthly return on investment payments due at the time of notice of termination to WCE.

20. Through no fault of Plaintiffs, the goal of the Business Venture never came to fruition.

21. Thereafter, Defendant Guerra and Defendant Hanke engaged in extortion tactics to collect on a debt which they allege Plaintiffs owe to them (hereinafter the "Nonexistent Debt").

22. These actions include but are not limited to: creating websites using Plaintiffs' likeness; publishing false statements about Plaintiffs and their business practices; harassing Plaintiffs; publishing false police reports about Plaintiffs; and other tactics to be shown at trial.

23. In September 2018, Defendant Hanke filed a false police report with Detective Gohlke with the Kannapolis Police Department (attached hereto as "**Exhibit A**"), which accused Plaintiff Brian Lillie and Plaintiff EHG of, *inter alia*, defrauding investors.

24. The Police Department did not press charges.

25. Upon information and belief, they did not press charges because these claims were baseless and malicious.

26. In January 2019, Defendant Hanke purchased a number of website domain names from GoDaddy.com, LLC, including but not limited to the following domain names (hereinafter the "Websites")(screenshots of the Websites are attached hereto as "**Exhibit B**"):

    a. brianlillie.info

    b. brianlilliescam.com

27. The Websites purchased by Defendant Hanke contained false information regarding Plaintiffs.

28. The Websites also contained false information regarding business entities associated with Plaintiffs and allegations that Plaintiffs engaged in fraudulent business practices.

29. In May 2019, Defendant Hanke sent an email to Plaintiff Brian Lillie regarding the Websites.

30. In this email, Defendant Hanke acted as though he stumbled upon these websites.

31. In June 2019, Plaintiff Brian Lillie received email communication from at least two different email addresses inquiring about the Websites. The author of one of those emails claimed to be "gathering content for a story" and was allegedly interviewing Plaintiff Brian Lillie's "employees, kids, everyone [he] ever touched."

32. On June 21, 2019, Defendant Guerra sent an email to Plaintiff Tracy Lillie.

33. In this email, Defendant Guerra lodged false claims against Plaintiff Brian Lillie regarding his business practices, calling him a "Professional Ponzi Schemer." Such false claims include but are not limited to the following:

a. "[Plaintiff Brian Lillie] uses his wife's business like an excuse for his Ponzi Scheme."

b. "[Plaintiff Brian Lillie] fabricate[s] documentation to show funds are still coming in when they are not."

c. "[Plaintiff Brian Lillie] uses attorney emails/bank statements/wire receipts that are fraudulent in order to show that what he is saying is the truth."

d. "[Plaintiff Brian Lillie] sends emails and correspondence from banks/attorneys/ and bankers that are fraudulent. (Remember his intention is to steal your money)."

34. In this email, Defendant Guerra threatened Plaintiff Tracy Lillie that it "eventually will affect your family." Defendant Guerra included Defendant Hanke via carbon copy on this email communication.

35. Upon information and belief, on or about June 21, 2019, Defendant Guerra sent an email to Chalk Couture, who employs Plaintiff Tracy Lillie.

36. Upon information and belief, this email contained false allegations against Plaintiffs relating to the alleged fraudulent business practices.

37. On July 12, 2019, Defendant Guerra sent an email to Chalk Couture in which he admitted that the "email was sent erroneously and Mrs. Lillie is not one of the parties involved in the dispute nor has she or her business ever been" and acknowledged that "the email has caused great damage for Mrs. Lillie and her reputation."

38. On or about August 22, 2019, Defendant Guerra sent an email to Plaintiff Tracy Lillie. Defendant Guerra included Defendant Hanke via carbon copy on this email communication.

39. In this email, Defendant Guerra threatened Plaintiff Tracy Lillie: "Do you know that your grand daughter is in dangerous (sic) because he confess that he owes money to real bad people."

40. Defendant Guerra further threatened: "Who play with fire someone can get burn is only a matter of time and he is dealing with bad guys."

41. Upon information and belief, Defendant Hanke and Guerra maliciously created, caused to be created, and/or otherwise generated multiple false reports online regarding Plaintiffs and alleged fraudulent business practice. These false online reports include, but are not limited to the following:

   a. On or about September 23, 2019, Defendant Hanke and/or Defendant Guerra created a post on www.scamion.com (hereinafter the "September 23 Scamion Post") (attached hereto as "**Exhibit C**") which contains false information and allegations

that Plaintiffs engaged in fraudulent business practices to lie, deceive, and defraud investors out of money. The September 23 Scamion Post falsely alleges that Plaintiffs engage in "fraud and deception" and "fabricate documentation" in furtherance of "his intention to steal your money." The author of this post embedded a link to the Websites.

b. On or about September 24, 2019, Defendant Guerra, under the alias "Luis – Hollywood United States," created Report #1485488 on the website www.ripoffreport.com (hereinafter the "September 24 Ripoff Post") (attached hereto as "**Exhibit D**") which contains a picture of Plaintiff Brian Lillie and also contains false information and allegations that Plaintiffs engaged in fraudulent business practices to lie, deceive, and defraud investors out of money. The September 24 Ripoff Post appears to be a verbatim recitation of the September 23 Scamion Post.

c. On or about September 26, 2019, Defendant Guerra, under the alias "Guerra – United States," created Comment #1 to the September 24 Ripoff Post accusing Plaintiff Brian Lillie of "steal[ing] money from innocent people." "Guerra" is listed as the author of the original report.

d. On or about September 28, 2019, Defendant Hanke, under the alias "Alan – (United States)," created Consumer Comment #2 to the September 24 Ripoff Post in which Defendant Hanke accused Plaintiff Brian Lillie of "unlawful practices and deceit," alleged that he "along with several others [are] owed hundreds of thousands," and embedded a link to the Websites.

e. On or about September 27, 2019, Defendant Guerra, under the alias "Luis – Hollywood FL United States," created Report #1485642 on the website www.ripoffreport.com (hereinafter the "September 27 Ripoff Post") (attached hereto as "**Exhibit E**") which contains false information and allegations of fraud against Plaintiffs. The September 27 Ripoff Post alleges that Plaintiffs "took money from us in excess of 800k Kannapolis North Carolina." The author of the September 27 Ripoff Post also embedded photographs of Plaintiff Brian Lillie, Plaintiff Tracy Lillie, and what appears to be Plaintiff's minor child.

f. On or about November 10, 2019, Defendant Hanke, under the alias "Alan – Crystal Lake Illinois United States" created Report # 1487538 on the website www.ripoffreport.com (hereinafter the "November Ripoff Post") (attached hereto as "**Exhibit F**") which contains false information and allegations of fraud against Plaintiffs. The author of this post embedded a link to the Websites. The November Ripoff Post alleged that Plaintiffs wrote "several fake wire receipts."

g. On or about November 11, 2019, Defendant Hanke and/or Defendant Guerra created a post on www.scamion.com (hereinafter the "November Scamion Post") (attached hereto as "**Exhibit G**") which contained false information and allegations that Plaintiffs, *inter alia*, wrote bad checks, sent fake wire receipts, and otherwise defrauded investors. A link to the Websites is embedded in this Scamion post. The text of the November Scamion Post appears to be a verbatim recitation of the November Ripoff Post.

42. Plaintiffs have never defrauded, deceived, or stolen money from investors, nor have they fabricated wire receipts or any other documents as alleged by Defendants.

43. Defendant's allegations in the above paragraph are false.

44. Defendants made these statements knowing that they were false and/or with reckless disregard to their falsehood.

45. Defendant Hanke and Defendant Guerra continued to threaten Plaintiffs throughout Summer and Fall 2019 via email and other communications in an attempt to collect the Nonexistent Debt.

46. On or about October 15, 2019, Defendant Guerra sent text messages to Plaintiff Brian Lillie and Maria Marta in a group message.

47. In these text messages, Defendant Guerra threatened Plaintiff Brian Lillie: "You don't know me mf. You are fuck.... I want my money NOW you better move you have one hr."

48. Defendant Guerra also threatened Plaintiff Brian Lillie: "You and your family that are on this will know that I have more pride and balls that you will dream to have. This is it for me fuck you[.]"

49. Defendant Guerra also threatened Plaintiff Brian Lillie: "I promise to f him up with everything I got."

50. On or about October 18, 2019, Defendant Guerra sent text messages to Plaintiff Brian Lillie and Maria Marta in a group message.

51. In these text messages, Defendant Guerra wrote: "Alan I am doing my share and I am showing you please do the same. I want to see everything so I know that we are a team against these people."

52. Defendant Guerra then sent texts and pictures which tend to suggest that Defendant Guerra and Defendant Hanke were travelling in North Carolina and on their way to Plaintiffs.

53. Defendant Guerra also threatened: "Pay us . . . or you can not Imagen (sic) what is coming to you. . . Me snd (sic) Jose will get you mother fucker."

54. Unaware of their legal rights and that they could defend themselves from Defendants' blatant misconduct, Plaintiffs succumbed to Defendants' threats and coercion.

55. As a direct result of the threats, coercion, and other conduct of Defendants, Plaintiffs have made payments to Defendants in the amount of $489,125.00.

56. As shown above, Defendants purposefully and knowingly targeted their behavior

at Plaintiffs and their businesses here in North Carolina.

57. Jurisdiction and venue are proper in this Court.

## FIRST CLAIM FOR RELIEF
### (Libel Per Se)

58. The facts and allegations of the preceding paragraphs are re-alleged and incorporated herein by reference.

59. As alleged herein above, Defendants maliciously wrote, published, and/or caused to be printed, numerous false statements about Plaintiffs to third parties.

60. Specifically, Defendants published the false statements by communicating, distributing, and/or causing the statements to be distributed to one or more persons other than Plaintiffs via: brianlillie.info; brianlilliescam.com; www.ripoffreport.com; and www.scamion.com.

61. The above-referenced statements made by Defendants were false and at the time of publication, Defendants knew the statements were false and/or failed to exercise ordinary care in order to determine whether the statements were false.

62. These false statements are libelous on their face in that they tend to impeach a Plaintiffs in their respective trade or profession and otherwise tend to subject Plaintiffs to ridicule, contempt or disgrace.

63. As a direct and proximate cause of the libelous statements of Defendants, Plaintiffs have suffered loss of reputation or standing in the community, mental or physical pain and suffering, inconvenience, and/or loss of enjoyment.

64. As a direct and proximate cause of the libelous statements of Defendants, Plaintiffs have been damaged in excess of $25,000.

## SECOND CLAIM FOR RELIEF
### (In the Alternative, Libel Per Quod)

65. The facts and allegations of the preceding paragraphs are re-alleged and incorporated herein by reference.

66. As alleged herein above, Defendants maliciously wrote, published, and/or caused to be printed, numerous false statements about Plaintiffs to third parties.

67. Specifically, Defendants published the false statements by communicating, distributing, and/or causing the statements to be distributed to one or more persons other than Plaintiffs via: brianlillie.info; brianlilliescam.com; www.ripoffreport.com; and www.scamion.com.

68. The above-referenced statements made by Defendants were false and at the time of publication, Defendants knew the statements were false and/or failed to exercise ordinary care in order to determine whether the statements were false.

69. Defendants intended the statements to impeach Plaintiffs in their trade or profession and to subject Plaintiffs to ridicule, contempt, and disgrace.

70. The persons other than Plaintiffs to whom the statement was published reasonably understood the statement to have the effects intended by Defendants.

71. As a direct and proximate cause of the libelous statements of Defendants, Plaintiffs have suffered loss of reputation or standing in the community, mental or physical pain and suffering, inconvenience, and/or loss of enjoyment.

72. As a direct and proximate cause of the libelous statements of Defendants, Plaintiffs have been damaged in excess of $25,000.

## THIRD CLAIM FOR RELIEF
### (Invasion of Privacy – Appropriation of Name or Likeness)

73. The facts and allegations of the preceding paragraphs are re-alleged and incorporated herein by reference.

74. Defendants appropriated the name and/or likeness of Plaintiffs for Defendants' own commercial use and benefit by, *inter alia*, using Plaintiff Brian Lillie's name for brianlillie.info and brianlilliescam.com, publishing pictures of Plaintiffs on www.ripoffreport.com and brianlillie.info.

75. Plaintiffs did not consent to the Defendants' appropriation of their name and/or likeness.

76. Defendants proximately caused Plaintiffs damage in an amount in excess of $25,000.

## FOURTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress)

77. The facts and allegations of the preceding paragraphs are re-alleged and incorporated herein by reference.

78. The extortive tactics, threats, harassment, and other actions of Defendants, as described herein were extreme and outrageous in that their conduct exceeds all bounds tolerated by decent society.

79. Defendants' conduct was intended to cause and/or recklessly indifferent to the likelihood it would cause severe emotional distress to Plaintiffs;

80. Defendants' conduct in fact caused severe emotional distress to Plaintiffs.

81. Defendants proximately caused Plaintiffs damage in an amount in excess of $25,000.

## FIFTH CLAIM FOR RELIEF
### (Unfair and Deceptive Trade Practices)

82. The facts and allegations of the preceding paragraphs are re-alleged and incorporated herein by reference.

83. The actions of Defendants, as described herein were of and affecting commerce pursuant to N.C. Gen. Stat. § 75-1.1.

84. The actions of Defendants as described herein constitute unfair and deceptive trade practices under Chapter 75 of the North Carolina General Statutes.

85. As a direct and proximate result of the conduct of The actions of Defendants, Plaintiffs have been damaged in an amount in excess of $25,000 and are entitled to trebling of such damages.

86. The actions of Defendants described herein were willful, and there was an unwarranted refusal by those Defendants to fully resolve the matter, which constitutes the basis of this action.

87. Plaintiffs are entitled to an award of treble damages pursuant to N.C. Gen. § Stat. 75-16.

88. Plaintiffs are entitled to an award of its reasonable attorneys' fees and costs pursuant to N.C. Gen. Stat. § 75-16.1.

89. As a result of Defendants' conduct, Plaintiffs have been damaged in an amount in excess of $25,000.

## SIXTH CLAIM FOR RELIEF
### (Unjust Enrichment, as an Alternative Remedy Plead with Legal Remedies Above)

90. The facts and allegations of the preceding paragraphs are re-alleged and incorporated herein by reference.

91. Plaintiffs conferred a benefit on Defendants by the payments made in the amount of $489,125.00.

92. Defendants consciously accepted this benefit.

93. Plaintiffs did not confer the benefit gratuitously or by interfering in the affairs of Defendants.

94. Defendants' actions proximately caused damage to Plaintiffs in the amount of $489,125.00.

95. But for Defendants' misconduct, coercion, and financial pressure, Plaintiffs never would have made any payments to Defendants.

96. These damages exceed $25,000.

### SEVENTH CLAIM FOR RELIEF
(Punitive Damages)

97. The facts and allegations of the preceding paragraphs are re-alleged and incorporated herein by reference.

98. Defendants are liable for compensatory damages for their actions in this matter.

99. Defendants fraudulently, willfully, and wantonly caused foreseeable and actual damages to Plaintiffs here.

100. Defendants, and others acting similarly to them, should be deterred from taking such actions and should be penalized for doing so.

101. Defendants' conduct here is:

    a. Reprehensible;

    b. Presented a likelihood of serious harm to Plaintiffs;

    c. Made while Defendants knew of the probable consequences;

    d. Lasted for such a time as to cause further damage to Plaintiffs;

    e. Caused thousands of dollars-worth of damages;

    f. Was concealed by Defendants after its commission;

    g. Upon information and belief was not unusual conduct for Defendants; and,

    h. Profited Defendants.

102. Defendants have the ability to pay punitive damages and Plaintiffs are entitled to recover said punitive damages from them pursuant to Chapter 1D-1 *et al* of the North Carolina General Statutes.

**WHEREFORE**, Plaintiffs Brian Lillie and wife Tracy Lillie pray the Court that:

(1) Plaintiffs have and recover a judgment from Defendants in an amount in excess of $25,000;

(2) Plaintiff recover punitive damages against Defendants;

(3) The damages awarded to Plaintiff be trebled pursuant to N.C. Gen. § Stat. 75-16;

(4) Plaintiff be awarded its attorney's fees pursuant to N.C. Gen. Stat. § 75-16.1 or as otherwise allowed by law;

(5) The costs of this action be taxed against the Defendants;

(6) A trial by jury be had as to all issues so triable; and

(7) Plaintiff have and recover such other and further relief as the Court deems just and proper.

This the 31 day of August, 2020.

Austin "Dutch" Entwistle, III, N.C. Bar. No. 52122
E. Garrison White, N.C. Bar No. 55301
Attorneys for the Plaintiffs

HARTSELL & WILLIAMS, P.A.
71 McCachern Boulevard
Post Office Box 368
Concord, NC 28026-0368
Telephone (704) 786-5161