IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


BRIAN LILLIE, TRACY LILLIE,      )
ENTERPRISE HOLDINGS              )
GROUP, LLC, d/b/a COLUBRIS       )
VENTURES, ECREATIVE GROUP,       )
INC., and THREE WIDE MEDIA, LLC, )
                                 )
          Plaintiffs,            )
                                 )
     v.                          )          1:20CV905
                                 )
LUIS ALBERTO GUERRA and          )
ALAN JOHN HANKE,                 )
                                 )
          Defendants.            )


**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

        This matter comes before the court on Defendants' Motion to

Dismiss, (Doc. 13), for lack of personal jurisdiction.

Defendants also filed a brief in support of their motion, (Doc.

14); Plaintiffs filed a response in opposition, (Doc. 16); and

Defendants filed a reply, (Doc. 17).

        For the reasons stated herein, this court will deny

Defendants' motion.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

        **A.      Factual Background**

        A majority of the facts are described here, but additional

relevant facts will be addressed as necessary throughout the

opinion. According to the Complaint, Plaintiffs are all
residents of North Carolina. (Complaint ("Compl.") (Doc. 9)
¶¶ 1-4.) Plaintiffs Brian and Tracy Lillie are residents of
Cabarrus County, North Carolina; Plaintiff Enterprise Holdings
Group, LLC ("EHG") is a North Carolina Limited Liability
Company; Plaintiff eCreative Group, Inc., is an Iowa Corporation
with its principal place of business in Cabarrus County; and
Plaintiff Three Wide Media, LLC, is an Iowa Limited Liability
Company with its principal place of business in Cabarrus County.
(Id.) Defendant Alan John Hanke ("Hanke") is a resident of
McHenry County, Illinois, and Defendant Luis Alberto Guerra
("Guerra" or collectively "Defendants") is a resident of Broward
County, Florida. (Id. ¶¶ 5-6.)

Plaintiffs allege that EHG and a third party, World
Cryptocurrency Exchange Incorporation ("WCE"), executed an
investment agreement wherein WCE would provide EHG an initial
investment of funds, and EHG would invest those funds. (Id.
¶ 7.) EHG also executed a profit share agreement which sets
forth compensation for consultants, who are responsible for
bringing investors in the business venture between WCE and EHG.
(Id. ¶ 8.) Defendants were consultants in this business venture.
(Id. ¶ 10.) Plaintiffs allege that through no fault of their

-2-

own, the goal of this business venture never came to fruition. (Id. ¶ 20.)

Plaintiffs contend that after the business venture failed, Defendants engaged in a variety of extortion tactics to attempt to recover money Defendants believed Plaintiffs owed them. (Id. ¶¶ 21-22.) According to the Complaint, Defendants filed a false police report with the Kannapolis Police Department. (Id. ¶ 23.) Defendants also created websites to publish defamatory statements about Plaintiffs and their businesses, in addition to posting on other websites similar statements. (Id. ¶¶ 26-28, 41.) Additionally, Defendants sent Plaintiffs emails throughout the summer 2019 and fall 2019 wherein Defendants accused Plaintiffs of fraudulent business practices and threatened Plaintiffs to pay Defendants. (Id. ¶¶ 29-40.) Moreover, Defendants sent pictures via text message implying Defendants were on their way to Plaintiffs, (id. ¶ 52), and sent threatening text messages to Plaintiffs, (id. ¶¶ 46-53).

Plaintiffs assert claims of libel per se, libel per quod, invasion of privacy – appropriation of likeness, intentional infliction of emotional distress, unfair and deceptive trade practices, and unjust enrichment. (Id. ¶¶ 58-96.) Plaintiffs also seek punitive damages. (Id. ¶¶ 97-102.)

-3-

**B.  Procedural Background**

Plaintiffs originally filed their Complaint on August 31, 2020, in Cabarrus County Superior Court. (Compl. (Doc. 9).) On October 2, 2020, Defendants filed a Petition for Removal with this court. (Doc. 1.) This court has jurisdiction pursuant to 28 U.S.C. § 1332. On October 9, 2020, Defendants filed their Motion to Dismiss for lack of personal jurisdiction. (Doc. 13.) Plaintiffs responded, (Doc. 16); and Defendants replied, (Doc. 17). This matter is ripe for adjudication.

**II.  STANDARD OF REVIEW**

"Under Rule 12(b)(2), a defendant 'must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge.'" UMG Recordings, Inc. v. Kurbanov, 963 F.3d 344, 350 (4th Cir. 2020), cert. denied, ____ U.S. ____, 141 S. Ct. 1057 (2021) (quoting Grayson v. Anderson, 816 F.3d 262, 267 (4th Cir. 2016)). At the motion to dismiss stage, all that is required to survive a motion to dismiss is for the plaintiff to make a prima facie showing in support of this court asserting personal jurisdiction. Universal Leather v. Koro AR, S.A., 773 F.3d 553, 561 (4th Cir. 2014). This court construes the complaint "in the light most favorable to the plaintiff, assume[s] credibility, and draw[s] the most favorable inferences

-4-

for the existence of jurisdiction." New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005) (internal quotation marks omitted) (quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)).

## III. **ANALYSIS**

A federal district court may assert personal jurisdiction over a non-resident defendant when two conditions are met: (1) the applicable state's long-arm statute provides a statutory basis for asserting personal jurisdiction; and (2) the exercise of personal jurisdiction complies with Fourteenth Amendment due process requirements. See Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001).

### A. **North Carolina's Long-Arm Statute**

North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4(1)d, extends "jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause." Id. (citation omitted). Defendants do not challenge personal jurisdiction under North Carolina's long-arm statute. (Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Br.") (Doc. 14) at 3-4.) Thus, this court's sole inquiry is whether personal jurisdiction is proper under the Due Process Clause. Christian Sci. Bd. of Dirs., 259 F.3d at 215.

-5-

**B.  Due Process and Personal Jurisdiction**

The Due Process Clause allows a court to exercise general or specific jurisdiction over a defendant. General jurisdiction exists "only when a defendant is 'essentially at home' in the State." Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., ____ U.S. ____, ____, 141 S. Ct. 1017, 1024 (2021) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). An individual is subject to general jurisdiction in his place of domicile. Id. (citing Daimler AG v. Bauman, 571 U.S. 117, 137 (2014)). Here, general jurisdiction is inappropriate because Defendant Hanke is domiciled in Illinois, and Defendant Guerra is domiciled in Florida. (Compl. (Doc. 9) ¶¶ 5, 6.)

On the other hand, specific jurisdiction exists when the plaintiff's claim arises from the defendant's contacts with the forum. See Bristol-Myers Squibb Co. v. Super. Ct. of Cal., 582 U.S. ____, ____, 137 S. Ct. 1773, 1780 (2017) (quoting Daimler, 571 U.S. at 127). Courts use a three-part test to determine whether the exercise of personal jurisdiction comports with due process: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable."

-6-

<u>ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.</u>, 293 F.3d 707, 712 (4th Cir. 2002) (internal quotation marks omitted). This court will consider each part in turn.

### 1. **<u>Purposeful Availment</u>**

First, the defendant must have purposefully availed himself of the forum. To determine whether Defendants purposefully availed themselves of North Carolina, this court asks whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980) (internal citations omitted). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985) (quoting <u>Keeton v. Hustler Mag., Inc.</u>, 465 U.S 770, 774 (1984)).

When an out-of-state defendant has acted outside the forum in a manner that injures a plaintiff within the forum, courts examine whether "the defendant has intentionally directed his tortious conduct toward the forum state, knowing that that conduct would cause harm to a forum resident." <u>Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.</u>, 334 F.3d 390, 398 (2003) (citing <u>Calder v. Jones</u>, 465 U.S. 783, 789-90 (1984)).

-7-

Defendants argue they have not purposefully availed themselves of North Carolina because their online activity, emails and text messages sent to Plaintiffs, as well as the Kannapolis police report, were not directed at North Carolina or a North Carolina audience. (See Defs.' Br. (Doc. 14) at 2, 6.) This court disagrees.

a.   **Electronic Activity**

First, Defendants purposefully availed themselves of North Carolina through their electronic activity. In ALS Scan, the Fourth Circuit addressed "when electronic contacts with a State are sufficient" to exercise personal jurisdiction. 293 F.3d at 713. The Fourth Circuit "adopt[ed] and adapt[ed]" the model established in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997), which created a "sliding scale" for examining whether electronic contacts give rise to specific jurisdiction:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange

-8-

> information with the host computer. In these cases,
> the exercise of jurisdiction is determined by
> examining the level of interactivity and commercial
> nature of the exchange of information that occurs on
> the Web site.

ALS Scan, 293 F.3d at 713–14 (quoting Zippo, 952 F. Supp. at

1124). Applying Zippo, the Fourth Circuit held:

> [A] State may, consistent with due process, exercise
> judicial power over a person outside of the State when
> that person (1) directs electronic activity into the
> State, (2) with the manifested intent of engaging in
> business or other interactions within the State, and
> (3) that activity creates, in a person within the
> State, a potential cause of action cognizable in the
> State's courts.

Id. at 714.

According to the Complaint, Defendants purchased several

website domains, including brianlillie.info and

brianlilliescam.com, which included posts about Plaintiffs'

allegedly false business practices and allowed visitors to post

comments. (See Compl. (Doc. 9) ¶ 26.) Defendants also posted

similar accusations about Plaintiffs' business practices on

other websites. (Id. ¶ 41.) In their Motion to Dismiss,

Defendants argue that there are no allegations that Defendants'

websites and Internet posts were specifically directed at a

North Carolina audience, (Defs.' Br. (Doc. 14) at 2, 6).

Defendants argue that these posts were "for educational and

informational purposes," as Defendants' posts were "to educate

and warn other potential investors, regardless of their

-9-

location," and therefore do not subject Defendants to personal jurisdiction in North Carolina. (Id. at 6-7) (citing Burleson v. Toback, 391 F. Supp. 2d 401, 414 (M.D.N.C. 2005)).

Applying the ALS Scan factors to this case, this court finds that Plaintiffs have made a prima facie showing that Defendants purposefully availed themselves of North Carolina. The first ALS Scan factor is met because Defendants directed electronic activity into North Carolina by posting defamatory material on websites accessible in North Carolina. (Compl. (Doc. 9) ¶¶ 26-28, 41.) Although the audience for the websites and posts may have been nationwide, much of the content was aimed toward North Carolina businesses, North Carolina business owners, and businesses with a principal place of business in North Carolina. Plaintiffs allege that Defendants' very purpose for this electronic activity was to pressure Plaintiffs into paying Defendants. (Id. ¶¶ 21, 56.) Assuming the truth of Plaintiffs' allegations at this stage of the proceedings, Plaintiffs have alleged that electronic activity was directed in North Carolina in order to directly affect North Carolina business activity.

Regarding the second ALS Scan factor, this court finds Plaintiffs have made a prima facie showing that Defendants had a "manifested intent of engaging in business or other

-10-

interactions" in North Carolina. 293 F.3d at 714. Although it does not appear Defendants intended to engage in business in North Carolina, Defendants' electronic activity reflects an intent to discourage Plaintiffs' investors and customers from doing business with Plaintiffs, going so far as to include pictures of Plaintiffs and their addresses. (See e.g., Doc. 15-1 at 4 ("With this complaint we are warning investors and businesses to be aware of the fraud and deception being committed by the owner of the companies listed below."); Doc. 15-3 at 1 ("Brian J Lillie Brian Lillie and Stacy Lillie of Kannapolis NC and Stacy K Lillie owe us around 800k for the past two years. Every week they find a new excuse . . . [.]").) Additionally, all of Plaintiffs' businesses have their principal place of business in North Carolina, (Compl. (Doc. 9) ¶¶ 2-4), further indicating Defendants intended to engage in interactions in North Carolina. See Lostutter v. Olsen, No. 1:16-cv-1098, 2017 WL 3669557, at *8 (M.D.N.C. Aug. 24, 2017) ("In part because [the plaintiff's] business was a brick-and-mortar store located in Kernersville, North Carolina, Defendants' attempts to disrupt his business were likely aimed at North Carolina.").

The third ALS Scan factor is also met because the electronic activity created Plaintiffs' potential causes of action for libel, invasion of privacy, and intentional

-11-

infliction of emotional distress, which are cognizable in North Carolina's courts. See ALS Scan, 293 F.3d at 714. Therefore, this court finds Defendants purposefully availed themselves of North Carolina through their electronic activity.

### b.   Emails and Text Messages

Second, Defendants purposefully availed themselves of North Carolina through their emails and text messages to Plaintiffs. Defendants assert that their text and email communications with Plaintiffs lack a substantial relationship to North Carolina, characterizing these communications as "single or sporadic" and therefore insufficient to establish personal jurisdiction. (Defs.' Br. (Doc. 14) at 7.) Defendants concede that they did contact Plaintiffs – who are North Carolina residents – through these communications but assert that this was "because of their preexisting business arrangement" and is therefore not a basis for personal jurisdiction. (Id. at 9.) In response to Plaintiffs' claim that Defendants texted them pictures implying Defendants had entered North Carolina to carry out their threats, Defendants argue that "mere physical presence at one time in the past is insufficient" to establish either general or specific personal jurisdiction. (Id. at 5.) Defendants maintain that "[t]here was no purposeful direction of activities at North Carolina residents." (Id. at 9.)

-12-

The Fourth Circuit has held that emails and text messages directed at the forum can give rise to specific jurisdiction. See Universal Leather, 773 F.3d at 562 (holding that personal jurisdiction was proper where the parties corresponded regularly via email over the course of two years). Defendants analogize this case to Consulting Engineers Corp. v. Geometric Ltd., 561 F.3d 273 (4th Cir. 2009), and argue that the emails here are "sporadic" and "not sufficient to allow the courts to exercise personal jurisdiction." (Defs.' Br. (Doc. 14) at 7.) In Consulting Eng'rs Corp., the parties exchanged four brief emails, several telephone conversations, and exchanged draft non-disclosure agreements. 561 F.3d at 281-82. The Fourth Circuit declined to assert personal jurisdiction because the defendant's contacts with the forum were "too attenuated." Id. at 282 (holding that where the defendant did not have any property, employees, or business in the forum state, the defendant's employees had not traveled to the forum state, and the defendant did not initiate contact with the plaintiff, personal jurisdiction was inappropriate).

However, this case is distinguishable from Consulting Eng'rs Corp. Here, Defendants emailed and texted Plaintiffs regularly throughout the summer and fall 2019 to persuade Plaintiffs to pay Defendants. (Compl. (Doc. 9) ¶ 45.) These

-13-

messages were not sporadic, but rather all contained similar accusations that Plaintiffs defrauded Defendants and owed money to Defendants. (See id. ¶¶ 29-40, 45-53.) The Complaint demonstrates Defendants engaged in a pattern of communications to Plaintiffs for the purpose of exerting pressure regarding payment. Defendants also sent messages to Plaintiffs that led Plaintiffs to believe that Defendants had traveled to North Carolina on at least one occasion as part of Defendants' plan to receive payment from Plaintiffs. (Id. ¶ 52.) This is especially notable because "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship" is an important factor for determining personal jurisdiction. Consulting Eng'rs Corp., 561 F.3d at 278. Although Plaintiffs do not allege that Defendants actually made in-person contact, the facts alleged in the Complaint give rise to a reasonable inference that it was Defendants' intention to make Plaintiffs believe Defendants were in North Carolina on their way to Plaintiffs to pressure Plaintiffs into paying Defendants. (See Compl. (Doc. 9) ¶¶ 21, 54.) Therefore, this court finds Defendants purposefully availed themselves of North Carolina through their emails and text messages to Plaintiffs.

-14-

### c. **Police Report**

Finally, the police report also supports asserting specific jurisdiction over Defendants. Plaintiffs argue that by filing the police report seeking "involvement of local North Carolina law enforcement and/or government officials, . . . Defendants are primary participants in an alleged wrongdoing intentionally directed at a North Carolina resident." (Doc. 16 at 7 (quoting <u>Calder</u>, 465 U.S. at 790 (internal quotation marks and brackets omitted).) On the other hand, Defendants compare their actions to sending a "single email to someone located in North Carolina," (Defs.' Br. (Doc. 14) at 8). However, even a single contact may be sufficient to assert specific jurisdiction, "provided that the principle of 'fair play and substantial justice' is not thereby offended." <u>Carefirst</u>, 334 F.3d at 397 (citing <u>Burger King Corp.</u>, 471 U.S. at 477-78).

Another court in this district has previously addressed whether reporting a plaintiff to the forum's law enforcement authorities can form the basis of specific jurisdiction. In <u>Lostutter</u>, the plaintiff alleged in support of its libel claim that the defendants "encouraged online readers to contact North Carolina authorities to have [the plaintiff] investigated." <u>Lostutter</u>, 2017 WL 3669557, at *9. The district court

subsequently found specific jurisdiction was appropriate. Id. at *10.

Here, Defendants went a step further than the defendants in Lostutter by actually reporting Plaintiffs to North Carolina police. (Compl. (Doc. 9) ¶ 23.) Moreover, even if the police report on its own does not support asserting specific jurisdiction, the combination of the police report with Defendants' other actions described supra support this court's finding that Defendants have purposefully availed themselves of North Carolina. Defendants argue that if this court finds the police report serves as a basis for personal jurisdiction, the Complaint against Defendant Guerra should be dismissed because only Defendant Hanke was involved in the filing of the police report. (Doc. 17 at 1.) However, Defendant Guerra was involved in creating the websites and authoring the posts, along with sending emails and text messages to Plaintiffs. (See Compl. (Doc. 9) ¶¶ 32-34, 38-41, 46-53.) Thus, even if Defendant Guerra was not involved in filing the police report, he purposefully availed himself of North Carolina through his electronic activity directed at North Carolina. Accordingly, this court finds Defendants purposefully availed themselves of North Carolina.

### 2.   **Claims Arising out of Activities Directed at the State**

"The second prong of the test for specific jurisdiction — that the plaintiff's claims arise out of the activities directed at the forum — requires that the defendant's contacts with the forum state form the basis of the suit." Consulting Eng'rs Corp., 561 F.3d at 278-79 (citing Burger King Corp., 471 U.S. at 472; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). For specific jurisdiction to apply, there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Goodyear, 564 U.S. at 919 (internal quotation marks and brackets omitted).

Defendants concede the Complaint alleges communication with the Lillies and the Kannapolis Police Department, but Defendants contend they did not target North Carolina or direct their activities at North Carolina residents. (Defs.' Br. (Doc. 14) at 8-9.) However, Plaintiffs' claims arise out of Defendants' conduct toward North Carolina. Plaintiffs' libel claim and invasion of privacy claim are based on Defendants' creation of websites and publication of statements concerning Plaintiffs' business. (See Compl. (Doc. 9) ¶¶ 58-76.) Further, Plaintiffs'

other claims are based on Defendants' email and text message communications with the Lillies and the police report, in addition to the websites and publications on those websites. (See id. ¶¶ 77-96.) Thus, assuming the truth of Plaintiffs' allegations at this stage of the proceedings, Plaintiffs have alleged sufficient facts showing Plaintiffs' claims arise out of Defendants' conduct in North Carolina. See Helicopteros Nacionales de Colombia, 466 U.S. at 414 ("When a controversy is related to or 'arises out of' a defendant's contacts with the forum, the Court has said that a 'relationship among the defendant, the forum, and the litigation' is the essential foundation of in personam jurisdiction.") (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)).

### 3. <u>Constitutional Reasonableness</u>

Lastly, specific jurisdiction must be constitutionally reasonable. Courts consider various factors to determine whether specific jurisdiction is constitutionally reasonable, including:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

Consulting Eng'rs Corp., 561 F.3d at 279 (citations omitted).

Case 1:20-cv-00905-WO-LPA   Document 22   Filed 09/09/21   Page 18 of 21

Defendants argue that each of these factors weighs against this court exercising jurisdiction. (Defs.' Br. (Doc. 14) at 9.) This court will consider each factor in turn.

First, Defendants argue they are burdened by litigating in North Carolina because they reside in Illinois and Florida. (Id.) Although it may be less burdensome for the litigation to occur in one of Defendants' states of residence, litigating in North Carolina must be "'so gravely difficult and inconvenient' that [the defendant] unfairly is at a 'severe disadvantage' in comparison to his opponent." Burger King Corp., 471 U.S. at 478 (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 18 (1972); McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)). This court finds no such severe disadvantage here.

Second, Defendants argue that because Defendants are not residents of North Carolina, and two Plaintiffs are businesses formed in Iowa, North Carolina does not have an interest in adjudicating the dispute. (Defs.' Br. (Doc. 14) at 9.) This is not true. The Lillies live in North Carolina, and the three business-Plaintiffs' principal places of business are in North Carolina. (Compl. (Doc. 9) ¶¶ 1-4.) Thus, North Carolina has a significant interest in adjudicating this dispute.

Third, Defendants argue that because the business-Plaintiffs are sophisticated parties, Plaintiffs' interest in

-19-

obtaining relief is less important. (Defs.' Br. (Doc. 14) at
10.) As mentioned, all Plaintiffs are either residents of North
Carolina or have their principal place of business in North
Carolina. (Compl. (Doc. 9) ¶¶ 1-4.) Thus, litigating in North
Carolina will bring Plaintiffs "convenient and effective
relief," Consulting Eng'rs Corp., 561 F.3d at 279 (citations
omitted), since this litigation is brought in Plaintiffs' state
of residence.

Fourth, Defendants argue that Iowa, Florida, or Illinois
would have a greater interest than North Carolina in
adjudicating the dispute. (Defs.' Br. (Doc. 14) at 10.)
Defendants offer no further explanation of why those states
would have greater interests. On the facts alleged presently,
North Carolina has a significant interest in adjudicating this
dispute, as Defendants' actions as alleged in the Complaint
targeted North Carolina residents, allegedly causing damage to
individuals and businesses which are citizens of North Carolina.
(See generally Compl. (Doc. 9).)

Finally, Defendants argue there is no substantive policy of
North Carolina which would be furthered by this litigation.
(Defs.' Br. (Doc. 14) at 10.) Regardless of whether North
Carolina policy would be furthered by this litigation, this

factor does not change the result: asserting personal jurisdiction over Defendants is constitutionally reasonable.

In sum, Defendants failed to show how asserting specific personal jurisdiction would be constitutionally unreasonable. Therefore, this court will find that Defendants are subject to specific personal jurisdiction in North Carolina.

IV. **CONCLUSION**

For the reasons set forth above, this court finds that Defendants' Motion to Dismiss for lack of personal jurisdiction, (Doc. 13), will be **DENIED.**

**IT IS THEREFORE ORDERED** that Defendants' Motion, (Doc. 13), is **DENIED.**

This the 9th day of September, 2021.

_____
United States District Judge

-21-